## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RICHARD A. YEAGER and** | ) | |
| **DEANA J. YEAGER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:14-cv-117-MHT-PWG** |
| | ) | |
| **OCWEN LOAN SERVICING,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This action is brought pursuant to the Fair Debt Collection Practice Act[1] and arises from Defendant Ocwen Loan Servicing, LLC's (hereinafter "Defendant") transmission of a letter to Plaintiffs Richard A. Yeager and Deana J. Yeager (hereinafter collectively "Plaintiffs"), which they allege constituted an attempt to collect a debt, but failed to meet the requirements therefor. Plaintiffs' claim is specifically asserted under 15 U.S.C. § 1692g. Before the court is Defendant's motion to dismiss Plaintiffs' Complaint (Doc. 7).

For the reasons stated herein, the Magistrate Judge recommends that Defendant Ocwen Loan Servicing LLC's motion to dismiss is due to be **DENIED**.

---

[1] 15 U.S.C § 1692, et seq.

1

# I.    JURISDICTION

Subject matter jurisdiction over Plaintiffs' federal claims is conferred by 28 U.S.C. § 1331.  The parties do not dispute venue or personal jurisdiction, and there are adequate allegations in Plaintiffs' Complaint to support both.

On March 13, 2015, this matter was referred to the undersigned by U.S. District Judge Myron H. Thompson for disposition or recommendation on all pretrial matters. (Doc. 16).  *See also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

# II.    BACKGROUND AND FACTS[2]

Defendant is a corporation engaged in the collection of debts. (Doc. 1 at ¶ 5). In late 2012, Defendant acquired Homeward Residential Holdings, Inc. (hereinafter "Homeward") and its various residential mortgage loan servicing and origination operating subsidiaries. (Doc. 1 at ¶ 9). The servicing rights to Plaintiffs' mortgage

---

[2] These are the facts for purposes of ruling on the pending motion to dismiss.  They are gleaned exclusively from the allegations in the Complaint and the subject letter attached thereto as Exhibit A. "The pleadings include any information attached to a complaint." *U.S. ex rel. Oseroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015)(*citing* Federal Rule of Civil Procedure 10(c); *Crenshaw v. Lister*, 556 F.3d 1283, 1291 (11th Cir. 2009)). "[A] district court may consider an extrinsic document even on Rule 12(b)(6) review if it is (1) central to the plaintiffs' claim, and (2) its authenticity is not challenged." *Id.* (*citing SFM Holdings, Ltd. v. Banc of Am. Sec.*, LLC, 600 F.3d 1334, 1337 (11th Cir. 2010). The instant motion is not converted to a Rule 56 motion for summary judgment.

loan was among those acquired in the deal. (Doc. 1 at ¶ 11).When the servicing rights to Plaintiffs' mortgage were acquired by Defendant, the loan was in default or considered to be in default. (Doc. 1 at ¶ 12).

On or about March 15 or 16, 2013, Defendant initially contacted Plaintiffs by sending a letter dated March 15, 2013 entitled "NOTICE OF SERVICING (RESPA) and WELCOME TO OCWEN LOAN SERVICING, LLC." (Doc. 1 at ¶ 15; Doc. 1-1 at p. 1). Defendant stated therein that it was a debt collector and that any information obtained would be used for that purpose. (Doc. 1 ¶ 15).

The letter contained the follow statements, in pertinent part:

- "Effective 04/01/2013, Homeward Residential, Inc. (Homeward Residential) will transfer the servicing of your loan to Ocwen Loan Servicing, LLC (Ocwen). The transfer of the servicing of your account does not affect any term or condition of your financing agreement, other than terms directly related to the servicing of your account."

    (Doc 1-1 at p. 1).

- "Please make all checks payable to Ocwen and send all payments due on or after 04/01/2013 to the following address."

    (Doc. 1-1 at p. 1).

- "Ocwen Loan servicing is a debt collector attempting to collect a debt: any information obtained will be used for that purpose.  However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this

communication is not intended as and does not constitute an attempt to collect a debt. Prior servicer is a debt collector attempting to collect a debt and any information obtained will be used for that purpose. If you are not obligated on the debt or if the debt has been discharged in bankruptcy proceeding, this is for informational purposes only and is not an attempt to assess or collect the debt from you personally."

(Doc. 1-1 at p. 4)

The letter did not state the amount of debt or the name of the creditor to whom the debt was owed; did not contain a statement that unless the consumer within thirty days after receipt of the notice disputed the validity of the debt, or any portion thereof, the debt would be assumed to be valid by the debt collector; did not contain a statement that if the consumer notified the debt collector in writing within the thirty-day period that the debt, or any portion thereof, was disputed, the debt collector would obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and did not contain a statement that upon the consumer's written request within the thirty-day period, the debt collector would provide the consumer with the name and address of the original creditor, if different from the current creditor. (Doc. 1 at ¶ 15).

Plaintiffs received no other communication or written notice within five days

after the initial contact described above.  (Doc. 1 at ¶ 16). Plaintiffs argue that the omissions of the letter described above, and Defendant's failure to send another letter within five days thereafter, constitute a violation of FDCPA §1692g. (Doc. 1 at ¶ 15).

Plaintiffs seek statutory damages pursuant to 15 U.S.C. §1692k, as well as costs and attorney's fees. (Doc. 1 at ¶ 21).

## III.   MOTION TO DISMISS STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly* at 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. 558 (quoting 5 Wight & Miller § 1216, at 233-34 (quoting in turn *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Haw. 1953)) (alteration in original). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

## IV.  DISCUSSION

### A.  FDCPA Violation

The ultimate issue in this case is whether a RESPA-mandated letter containing a Mini-*Miranda* provision which expressly states that the letter is from a debt collector and is an attempt to collect a debt, is an initial communication in connection with the collection of a debt, such that the letter must comply with FDCPA § 1692g. Plaintiffs argue that inclusion of the Mini-*Miranda* language demonstrates that the letter was a communication in connection with the collection of a debt. Defendant argues that RESPA letters are not sent in connection with the collection of a debt and are not subject to the requirements of the FDCPA. Defendant further argues that the inclusion of the Mini-*Miranda* disclaimer has no effect on the nature of the letter.

#### 1.  FDCPA generally

The stated purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from

using abusive debt collection practices are not competitively disadvantaged, and to promise consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "The FDCPA is a remedial statute, and its provisions are to be liberally construed in favor of consumer debtors." *Bandy v. Midland Funding LLC*, 2013 WL 210730, *5 (S.D. Ala. Jan. 18, 2013)(*citing Johnson v. Riddle*, 305 F. 3d 1107, 1117 (10th Cir. 2002) and *Mammen v. Bronson & Migliaccio, LLP*, 715 F. Supp. 2d 1210, 1213 (M.D. Fla. 2009)).

Courts employ the "least sophisticated consumer" standard in analyzing claims under the FDCPA, with the exception of those arising out of §1692e(5), which is not at issue in this case.

> "The inquiry is not whether the particular plaintiff-consumer was deceived or misled; instead, the question is 'whether the 'least' sophisticated consumer would have been deceived' by the debt collector's conduct . . . The 'least sophisticated consumer' standard takes into account that consumer-protection laws are 'not made for the protection of experts, but for the public – that vast multitude which includes the ignorant, the unthinking, and the credulous.' [. . .] 'However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.'"

*Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1259 (11th Cir. 2014)(internal citations omitted).

**2**.   **FDCPA § 1692g**

FDCPA § 1692g(a) states as follows:

Within five days after the *initial communication with a consumer in connection with the collection of any debt*, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(emphasis added).

The FDCPA defines a "debt collector" as follows, in pertinent part:

"[A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection

9

> of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. [...] The term does not include–[...] (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity [...] (iii) concerns a debt which was not in default at the time it was obtained by such person ...."

15 U.S.C. § 1692a(6).

"The term 'communication' [under the FDPCA] means the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). The phrase "in connection with collection of any debt" is not defined in the FDCPA.

### 3.    RESPA

Section 2605(b)(1) of the  Real Estate Settlement Procedures Act ("RESPA")[3] states as follows: "Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person."   The letter at issue in this case is a RESPA "transfer-of-servicing" letter.

### 4.    Divergent  judicial  approaches  in  determining whether a RESPA letter containing a Mini-*Miranda* disclaimer is a communication in connection with the collection of a debt.

With regard to the issue in this case—whether a RESPA-mandated letter

---

[3] 12 U.S.C. § 2605, et seq.

containing a Mini-*Miranda* provision expressly stating that the letter is from a debt collector and is an attempt to collect a debt, is an initial communication in connection with the collection of a debt, such that the letter must comply with FDCPA § 1692g—there is no bright-line rule adopted by the Circuits. *See Parker v. Midland Credit Management, Inc.*, 874 F. Supp. 2d 1353, 1358 (M.D. Fla. 2012). There appear to be two divergent judicial approaches.

### a. The *Bailey* Approach

The first, referred to herein as the *Bailey* line of cases, finds as its genesis the Seventh Circuit's holding in *Bailey v. Security Nat. Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998). In *Bailey*, the court was presented with a letter sent by a mortgage servicer to debtors regarding the status of their account and payments due. The court ultimately held that, because the defendant mortgage servicer was not a debt collector in the first place, the letter it sent was not subject to the FDCPA.[4] *Id.* at 387-388. The court did, however, also briefly note that even if defendant had been a debt collector, the letter would not have been subject to the FDCPA because it did not explicitly demand payment and the due dates listed therein were all prospective. Accordingly, the court held, the letter "merely inform[ed] [the debtors] about the 'current status'

---

[4] In *Bailey*, the court determined the defendant was not a debt collector because the loan was not in default. The Complaint herein alleges that the subject loan was in default, and Defendant does not contest that it is a debt collector.

of their account" and was not sent in connection with the collection of a debt.  *Id.* at 388-389.[5] The letter did not have a Mini-*Miranda* provision.

The Seventh Circuit and other courts within the Seventh Circuit followed suit and expanded on the *Bailey* court's holding,[6] concluding that several factors should be considered in determining whether or not a letter is a communication sent in connection with the collection of a debt, including but not limited to the presence of a demand for payment.[7] *See, e.g.*, *Gburek v. Litton Loan Serv., L.P.*, 614 F.3d 380, 386 n.3 (7th Cir. 2010)(citing *Bailey* and holding that several factors come into play in the inquiry of whether or not a communication was sent in the connection with the collection of a debt, including whether there was a demand for payment); *Thompson*

---

[5] The Seventh Circuit in *Bailey* appears to have decided that factors such as the absence of an explicit "demand for payment" are dispositive in deciding if a communication was sent in connection with the collection of debt not by analyzing the language of Section 1692g itself (which never mentions a "demand"). The *Bailey* court reached this decision but by comparing the mortgage servicer's letter to an exemplar "dunning" letter drafted by the Hon. Richard Posner in the previous year. *See Barlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997). As the *Bailey* court explained, Judge Posner drafted the prototypical (and lawful) dunning letter in that case to provide debt collectors a safe haven, at least in the Seventh Circuit. The *Bailey* Court appears to have ultimately determined that because Judge Posner's letter, which demanded an overdue credit balance, was a "dun," that a letter not explicitly containing such a demand, such as the transfer-of-servicing notice in *Bailey*, is not a "dun."

[6] Other courts have also cited *Bailey* and its progeny. *See*, for example, *Olson*, *infra*, and *Hart v. FCI Lender Services, Inc.*, 2014 WL 198337 (W.D.N.Y. Jan. 15, 2014).

[7] *See Horkey v. J.V.D.B & Assoc., Inc.*, 333 F.3d 769 (7th Cir. 2003)(clarifying the absence of a demand for payment is not alone dispositive of whether the debt collector made the communication in connection to the collection of a debt).

*v. BAC Home Loans Servicing, L. P.*, 2010 WL 1286747, *3-5 (N.D. Ind. Mar. 26, 2010)(while acknowledging that "ensuring payment of the debt cannot be denied as the Defendant's ultimate goal," citing *Bailey* and holding that though the letter stated it was an attempt to collect a debt, because it did not provide the terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form, it was not a communication in connection with the collection of a debt); *Shelley v. Ocwen Loan Servicing, LLC*, 2013 WL 4584649 at *5 (S. D. Ind. Aug. 28, 2013)(citing *Bailey*, *Thompson*, and *Gburek* and applying the following factors in deciding whether a letter that contained a Mini-*Miranda* provision was a communication in connection with the collection of a debt: (1) the absence of a demand for payment; (2) the nature of the parties' relationship; (3) the purpose and context of the communications); *Olson v. Midland Funding, LLC*, 2013 WL 6717480 at *5 (D. Md. Dec. 18, 2013)(citing *Bailey* and *Gburek* and the factors enumerated therein and finding important the absence of a demand for payment or attempt to induce payment).

Several of the above courts describe the inquiry into whether a communication is sent in connection with the collection of a debt as one of "objective fact,"[8] before then applying the enumerated factors.

---

[8] *Thompson*, *supra*, at *3; *Shelley*, *supra*, at *3.

### b. The *Tocco* Approach[9]

By contrast, the court in *Tocco v. Real Time Resolutions, Inc.*, 48 F. Supp. 3d 535 (S.D.N.Y. Aug. 13, 2014) did not apply the factors enumerated by *Bailey* and its progeny and expressly rejected those courts' reading of the statute.[10]   The *Tocco* court analyzed the language of § 1692g and came to the conclusion that the terms used therein are "expansive" and "broad" enough to encompass RESPA letters containing Mini-*Miranda* disclaimers.

The *Tocco* court wrote as follows:

> [Defendant] argues that its [letter] was not subject to the FDCPA because it was a required notice under a different statute, the Real Estate Settlement Procedures Act ("RESPA"). The FDCPA applies to communications "in connection with the collection of any debt," 15 U.S.C. § 1692g(a), but [Defendant] contends its [letter] was informational only.  Although the letter identifies [Defendant] as a debt collector, provides FDCPA warnings, and proclaims itself 'an attempt to collect on a debt,' it does not explicitly demand payment. […]

> Several courts have embraced this distinction between informational letters and letters attempting to collect on a debt. In *Hart v. FCI Lender Services, Inc.*, a debt collector's transfer of servicing letter was not

---

[9] *Tocco* was decided after the close of briefing on this motion to dismiss.

[10] It bears noting that both out-of-circuit District Court decisions and out-of-circuit Circuit Court of Appeals decisions are persuasive authority in the absence of controlling precedent from the Supreme Court or the Eleventh Circuit. *See Hialeah, Inc. V. Florida Horseman's Benev. & Protective Ass'n, Inc.*, 899 F. Supp. 616, 623 (S.D. Fla. 1995)("a decision of a sister circuit court of appeals is not binding precedent on a district court in another circuit, but is merely persuasive authority")(citing *Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985)).

subject to section 1692g, notwithstanding its advisement, 'this is an attempt to induce Plaintiff to make payment, but rather, … assume[d] that he w[ould] be making payments and direct[ed] where he should send them.' No. 13 Civ. 6076 (CJS), 2014 WL 198337, at *6 (W.D.N.Y. Jan. 15, 2014). Likewise, in *Thompson v. BAC Home Loans Servicing*, a letter bearing a number of FDCPA-required notices was not subject to section 1692g because it did not 'address the status of Plaintiff's home mortgage loan, declare that it [was] in default, or demand any payment pursuant to such default.' No. 09 Civ. 311 (TS), 2010 WL 1286747, at *6 (N. D. Ill. March 26, 2010). *But see Gburek v. Litton Loan Servicing, LP*, 614 F.3d 380, 385 (7ᵗʰ Cir. 2010)('[T]he absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt'). The Second Circuit does not appear to have weighed in on the question.

This Court reads the statute differently from the *Thompson* and *Hart* courts. The fact that a letter may have been a required informational notice under a separate statute does not prevent it from being an initial communication 'in connection with the collection of [a] debt' under the FDCPA. 'In connection with' is synonymous with the phrases 'related to,' 'associated with,' and 'with respect to.' *Empire HealthChoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 157 (2d. Cir. 2005). It is expansive. *See Empire HealthChoice Assur., Inc.*, 396 F.3d at 157. It covers "communications that convey, directly or indirectly, any information relating to a debt.' *Foti v. NCO Financial Sys.*, 424 F. Supp. 2d 643, 657 (S.D.N.Y. 2006). And it is broad enough to encompass a letter identifying a new debt collector, providing an address for future payments, and warning, '[t]his is an attempt to collect on a debt and any information obtained will be used for that purpose.' […]

At oral argument, [Defendant] expressed concern that such a reading of the FDCPA would risk bringing every communication between debt collector and debtor within its sweep. But it is not burdensome for a debt collector contacting a debtor in 'an attempt to collect on a debt' to, at least that first time, include the full set of section 1692 notices or follow

up with them in five days.  To do otherwise risks confusing the debtor. […] [Plaintiff] states a claim that [Defendant] failed to comply with the FDCPA.

*Tocco* at 539-540.[11]

### 5. The positions of the parties herein.

Plaintiffs allege that the March 15, 2013 letter was an initial communication from a debt collector in connection with the collection of a debt and that it did not contain the required information. Plaintiffs further allege that no follow-up letter was sent containing the required information, which also violated the FDCPA. Plaintiffs allege that the language contained in the letter itself proves that it was sent in connection with the collection of a debt, most notably the following language: "Ocwen Loan servicing is a debt collector attempting to collect a debt: any

---

[11] In response to Plaintiffs' motion for leave to file new authority in opposition to Defendant's motion to dismiss, Defendant filed a response. (Doc. 14). In this response, Defendant seeks to distinguish *Tocco* by arguing that the letter in *Tocco* went far beyond including a Mini-Miranda disclaimer, as it also included information about the amount purportedly owed and interest accruing on the loan. (Doc. 14 at p. 4). This argument is not persuasive.  The *Tocco* court's holding that the plaintiff had alleged the existence of a communication sent in connection with the collection of a debt, as set forth hereinabove, was not reliant on the existence of a statement regarding the amount owed or interest that had accrued, but rather, the inclusion of a statement that the letter was from a debt collector and was an attempt to collect a debt, which is the same language contained in the letter at issue in this case.

information obtained will be used for that purpose." (Doc. 1 at ¶15; Doc. 1-1 at p. 4).[12]

Defendant asserts that the letter was not an initial communication sent in connection with the collection of any debt because it was merely a transfer-of-servicing notice sent to Plaintiffs as required by RESPA.  Defendant argues that § 1692g is only triggered when a communication is sent in connection with collection of a debt, and that the purpose of the letter was not to collect a debt, but to provide information in compliance with RESPA. (Doc. 7 at p. 7).

Defendant further asserts that the letter's statements that Defendant "is a debt collector attempting to collect a debt," and that "any information will be used for that

---

[12] Plaintiffs also argue in their response to Defendant's motion to dismiss that because their loan was in default, that the letter sent to them by Defendant was governed by the FDCPA and they were entitled to the protections of the FDCPA. (Doc. 9 at p. 3-4). The importance of a loan being in default or not goes to the question of whether a mortgage servicer is a debt collector, as the FDCPA excludes from the definition of debt collector "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity [...] (iii) concerns a debt which was not in default at the time it was obtained by such person ...." 15 U.S.C. § 1692a(f)(iii).  It does not answer the question of whether a communication sent by a debt collector was sent "in connection with the collection of a debt." Moreover, Defendant does not contest that it was a debt collector for purpose of this motion.

purpose"[13] were placed therein out of an "abundance of caution," to avoid running afoul of FDCPA § 1692e(11).[14]

Defendant argues that the Mini-*Miranda* language was "prophylactic" and despite stating exactly so, not intended to notify Plaintiffs that it was collecting a debt and did not alter its "informational character."  (Doc. 7 at p. 8).

Offering no case law binding on this court,[15] Defendant relies on the *Bailey* line of cases and urges this court to determine that RESPA letters are generally not subject to the FDCPA[16] and that this particular letter to Plaintiffs was not subject to the

---

[13]  *See* Doc. 7 at pp. 8-9.

[14]  15 U.S.C. § 1692e(11) states that the following is prohibited under the FDCPA: "The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action."

[15]  Defendant cites only one case from one District Court within the Eleventh Circuit, *Parker v. Midland Credit Management, Inc.*, 874 F. Supp. 2d 1353 (M.D. Fla. 2012). However, *Parker* does not involve a letter with Mini-*Miranda* language; in fact, the letter at issue in that case expressly declared the following: "[T]his is *not* an attempt to collect a debt." *Id.* at 1354. Defendant's letter in this case expressly declared the opposite—that it *was* an attempt to collect a debt. (Doc. 1-1 at p. 4) Accordingly, the *Parker* case is factually distinguishable from the instant case and is unpersuasive.

[16]  In support of this argument that RESPA letters are generally not subject to the FDCPA, Defendant cites case law discussing letters that do not contain Mini-*Miranda* disclaimers. *See e.g. Bailey v. Sec. Nat'l Serv. Co.*, 154 F.3d 384, 388 (7th Cir. 1998); *Derisme v. Hunt Leibert Jacobson, P.C.*, 880 F. Supp. 2d 339, 372 (D. Conn. 2012); *Parker v. Midland Credit Management, Inc.*, 874 F. Supp. 2d 1353 (M.D. Fla. 2012); *Kelly v. Nationstar Mtg., LLC*, 2013 WL 5874704 at *3-4 (E.D. Va. Oct. 31, 2013); *South v. Midwestern Audit Serv., Inc.*, 2010 WL

FDCPA because it did not "mak[e] a demand for payment of a debt," "threaten to take further action to collect a debt," "discuss the specifics of the underlying debt," "provide any information at all about [Plaintiffs'] particular loan status," or "attempt to induce Plaintiff[s] to make payment."[17]  (Doc. 7 at p. 7).

### 6. The *Bailey* approach is not persuasive.

As noted above, the *Bailey* approach involves weighing the letter at issue against several factors in order to determine if the communication was sent in connection with the collection of a debt, including but not limited to whether there

---

5088765 at *5 (E.D. Mich. Aug. 12, 2010); *Mabbit v. Midwestern Audit Serv., Inc.*, 2008 WL 723507 at *4 (E.D. Mich. Mar. 17, 2008).  These cases are both factually distinguishable and unpersuasive.  Moreover, this court will not speculate as to whether a RESPA letter not containing the Mini-*Miranda* language contained in the subject letter would be subject to the FDCPA, as that is not the specific question presented herein.

[17] In support of its argument that RESPA letters with Mini-*Miranda* disclaimers are not subject to the FDCPA, Defendant cite a bevy of out-of-circuit precedent. Many of these cases are factually distinguishable or address wholly different questions of law, and as such, do not provide support for Defendant's position with regard to the narrow issue in this case.  *See e.g. Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 399 (6th Cir. 1998)(which addressed a wholly different question—whether the use of Mini-*Miranda* disclaimer language transformed a letter in to an unlawful demand for payment); *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 110 (9th Cir. 1996)(analyzing whether the Mini-*Miranda* disclaimer language was threatening and thus violated another section of the FDCPA); *Boosahada v. Providence Dane LLC*, 462 Fed. App'x 331, 334 (4th Cir. 2013)(in the context of a different question—whether the defendant admitted it was seeking a consumer debt, as opposed to a commercial debt, by including the Mini-*Miranda* disclaimer—the court merely restated without any independent analysis the holdings in *Lewis* and *Wade*, *supra*, and *Gburek*, *supra*).

Defendant also cites out-of-circuit cases in support of its argument that RESPA letters with Mini-*Miranda* disclaimers are not subject to the FDCPA. These are from the *Bailey* line of cases, which is discussed in section a. of this Report and Recommendation, *supra*.

was a demand for payment, the nature of the relationship between the debtor and the debt collector, and the purpose of the communication. As an initial matter, it is puzzling how one can characterize inquiries into such matters as deciding "questions of objective fact," when analysis of the same presumably would require fact-finding and discovery. The question is whether or not the Plaintiffs have plausibly alleged a violation of the statute, and does not require fact-finding or fact-specific inquiries at this juncture.

More importantly, these cases place judicially-created, extra-statutory qualifications on the plain language of the statute. The FDCPA is to be liberally construed[18] and the terms contained therein are expansive and without qualification. At this stage of the case, the *Tocco* court's plain reading of the simple terms contained in § 1692g is persuasive.  For the purpose of this motion to dismiss, the simple phrase "in connection with the collection of debt" is "broad enough to encompass a letter identifying a new debt collector, providing an address for future payments, and warning, '[t]his is an attempt to collect on a debt and any information obtained will be used for that purpose.'" *Tocco* at 539-540.

---

[18] *See Bandy*, *supra*, at *5.

In the absence of any direction from the Supreme Court or the Eleventh Circuit regarding this issue, the plain language of the statute itself informs the question of whether or not Plaintiffs have plausibly alleged the existence of a communication in connection with the collection of a debt. In light of no controlling precedent stating otherwise, an allegation that Defendant sent a communication that explicitly sets forth nearly the exact language contained in the statute ("Ocwen Loan Servicing, LLC is a debt collector attempting to collect a debt") plausibly alleges the existence of a communication sent "in connection with the collection of a debt."[19]

### 7. **Plaintiffs have plausibly stated a claim under § 1692g**.

Plaintiffs have alleged that Defendant is a debt collector and that it sent them a letter which explicitly stated the letter was from a debt collector and was an attempt to collect a debt. Plaintiffs have further alleged that the letter did not contain the language required by FDCPA § 1692g, and that the Defendant did not send a follow-up letter otherwise containing the required language, which Defendant does not contest. The allegations of the Complaint plausibly state a claim for relief under

---

[19] Defendant's argument that because the letter was sent in compliance with RESPA, it is not governed by the FDCPA, is not persuasive. The two statutes are not mutually exclusive, and Defendant has offered no support for such a conclusion. The Defendant's argument that the Mini-*Miranda* disclaimer was placed in the letter out of an abundance of caution and therefore, cannot cause the letter to fall under the scope of the FDCPA, is also unpersuasive. It is elementary that a party can as Defendant so characterized, "[d]o more than the law requires," and in so doing, invoke other, unrelated laws.  (Doc. 7 at p. 9).

FDCPA § 1692g and are sufficient to survive the Defendant's motion to dismiss.[20] Accordingly, the motion to dismiss is due to be denied.

## IV.   CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that the Defendant's motion to dismiss (Doc. 7) be **DENIED**.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **July 29, 2015.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*,

---

[20] No determination is made at this stage of the proceedings regarding whether or not an analysis of the factors (as articulated by the *Bailey* line of cases) is appropriate at a later stage of these proceedings, such as summary judgment or trial, at which point it will be appropriate to keep in mind the persuasive effect of the Seventh Circuit's decision in *Bailey* and its progeny.

677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

      **DONE** and **ORDERED** this 15th day of July, 2015.

                       /s/ Paul W. Greene
                       United States Magistrate Judge