IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| RICHARD A. YEAGER and            )<br>DEANA J. YEAGER,                 )<br>individually and on behalf      )<br>of a class of similarly         )<br>situated individuals,           )<br>                                 )<br>     Plaintiffs,                 )<br>                                 )<br>     v.                          )<br>                                 )<br>                                 )<br>OCWEN LOAN SERVICING, LLC,       )<br>                                 )<br>     Defendant.                  )  | CIVIL ACTION NO.<br>1:14cv117-MHT<br>(WO) |

OPINION

Plaintiffs Richard A. Yeager and Deana J. Yeager bring claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692, et seq., against defendant Ocwen Loan Servicing, LLC for failing to provide a notice of debt validation by the deadline prescribed by the statute. This case is before the court on the recommendation of the United States Magistrate Judge that Ocwen Loan's renewed motion for judgment on the pleadings be denied. Also before the court are Ocwen Loan's objection to the recommendation.

After an independent and de novo review of the record, the court is of the opinion that the objection should be sustained, the recommendation rejected, and the renewed motion granted.

## I. BACKGROUND

### A. Statutory Framework

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA defines consumers' rights, establishes requirements for debt collectors, and sets forth penalties for violations of the statute, including actual and statutory damages. See 15 U.S.C. §§ 1692 et seq.

The validation-notice requirement of the FDCPA requires a debt collector to send a written notice to

the consumer with information about the debt, such as the amount of the debt and the creditor's name, while providing notice about the consumer's right to dispute the debt and the effects of the consumer's failure to do so.  The debt collector must send the validation notice to the consumer "[w]ithin five days after the initial communication with [the] consumer in connection with the collection of any debt ... unless the [] information is contained in the initial communication or the consumer has paid the debt."   15 U.S.C. § 1692g(a).[1]   The purpose of the validation-notice

---

1.  In full, the validation-notice requirement provides:

> "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;

(continued)

3

requirement is to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4 (1977), <u>as reprinted in</u> 1977 U.S.C.C.A.N. 1695, 1699; <u>accord</u> FTC Staff Commentary, 53 Fed. Reg. 50,097, 50,108-50,109 (1988) (stating that validation-notice requirement "is intended to assist

---

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

15 U.S.C. § 1692g(a).

the consumer when a debt collector inadvertently contacts the wrong consumer at the start of his collection efforts"). The validation-notice requirement is a "significant feature of [the] legislation." S. Rep. No. 95-382, at 4 (1977), as reprinted in 1977 U.S.C.C.A.N. 1695, 1699.

B. Factual Background

Ocwen Loan is a corporation engaged in the collection of debts. Compl. (doc. no. 1) ¶ 5. In late 2012, the company acquired Homeward Residential Holdings, Inc. and its various residential mortgage loan-servicing and origination-operating subsidiaries. Id. ¶ 9. The servicing rights to the Yeagers' mortgage loan was among those included in the acquisition. Id. ¶ 11.

On or about March 15 or 16, 2013, Ocwen Loan initially contacted the Yeagers by sending a letter entitled "NOTICE OF SERVICING TRANSFER (RESPA) and WELCOME TO OCWEN LOAN SERVICING, LLC." Id. ¶ 15;

Compl. Ex. A (doc. no. 1-1) at 2. The letter informed the Yeagers that, effective April 1, 2013, Ocwen Loan would service their loan; provided contact information; made certain disclosures; and answered a list of frequently asked questions. The letter also stated that Ocwen Loan "is a debt collector attempting to collect a debt." Compl. Ex. A (doc. no. 1-1) at 4. Ocwen Loan maintains that it sent the letter to comply with the Real Estate Settlement Procedures Act (RESPA), which mandates that a mortgage loan servicer shall notify the borrower in writing of a sale of the loan servicing "not less than 15 days before the effective date of transfer of the servicing of the mortgage loan." 12 U.S.C. § 2605(b)(2)(A).[2]

---

2. Ocwen Loan has argued that, in its communications with the Yeagers, it was stuck between a rock and a hard place: RESPA required it to send the March 15, 2013, communication 15 days <u>prior</u> to the effective date of transfer. However, sending a validation notice before Ocwen Loan had a legal right to collect the debt on April 1, 2013, risked FDCPA liability for false or misleading representations pursuant to 15 U.S.C. § 1692e. <u>See</u> Ocwen Loan Motion
(continued)

6

The letter did not set forth the FDCPA information: the amount of the debt or the name of the creditor to whom the debt was owed; a statement that, unless the consumer within 30 days after receipt of the notice disputed the validity of the debt, the debt would be assumed to be valid; a statement that, if the consumer notified the debt collector within the 30-day period that the debt was disputed, the debt collector would mail verification of the debt to the consumer; and a statement that, upon the consumer's written request within the 30-day period, the debt collector would provide the consumer with the name and address of the original creditor.  Compl. (doc. no. 1) ¶ 15.  The Yeagers received no other communication or written notice within five days after the initial letter.  Id. ¶ 16.  The Yeagers claim that the above omissions in the initial letter, and Ocwen Loan's failure to send

---

for Judgment on the Pleadings (doc. no. 27) at 13-15. In other words, Ocwen Loan would have sent notice that it was the creditor when, in fact, it was not yet.

another communication within five days thereafter that contained the missing information, constitute a violation of the validation-notice requirement of the FDCPA, 15 U.S.C. § 1692g(a).  Compl. (doc. no. 1) ¶ 20.

On April 2, 2013, Ocwen Loan sent the Yeagers a letter that included the information missing from the initial contact necessary to satisfy the FDCPA's validation-notice requirement.  Answer (doc. no. 26) ¶ 15 & Answer Ex. A (doc. no. 26-1).

### C. Procedural Background

In February 2014, the Yeagers filed a complaint against Ocwen Loan, asserting a putative class-action lawsuit that the company had violated the FDCPA.  They claim that Ocwen Loan violated their statutory procedural right to timely receipt of the validation notice required by the FDCPA.  See 15 U.S.C. § 1692g(a).  They allege that the company did not provide all of the information in the validation notice within five days of the company's initial contact on

March 15, 2013. They have not alleged any additional harm or material risk of harm beyond this statutory violation. The pleadings also reveal that Ocwen Loan provided the Yeagers with information sufficient to satisfy the validation-notice requirement by April 2, 2013. Thus, the Yeagers' claim rests solely on the contention that the company failed to comply with the validation-notice requirement until 13 days after the statutory deadline.

Ocwen Loan filed an answer and a motion for judgment on the pleadings pursuant to Rule 12(c) and 12(h)(2)-(h)(3) of the Federal Rules of Civil Procedure, arguing that the Yeagers lacked standing because the validation notice to which they say they were entitled was in fact sent to them by the company the day after it acquired servicing rights to their loan. On the magistrate judge's recommendation, the court denied that motion "with leave to Ocwen Loan to renew its standing arguments at any time after the Supreme Court's decision in [Spokeo, Inc. v. Robins,

9

135 S. Ct. 1892 (2015) (granting cert.)]." Order (doc. no. 39) at 2.

After the Supreme Court released its decision in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), Ocwen Loan renewed its motion for judgment on the pleadings as to the issue of standing, the magistrate judge recommended denying the motion, and Ocwen Loan objected to the magistrate judge's recommendation.

## II. LEGAL STANDARD

Rule 12(c) permits a motion for judgment on the pleadings "[a]fter the pleadings are closed[,] but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998) (internal citations omitted). In deciding a motion for judgment on the pleadings, the facts in the

complaint are accepted as true and viewed in the light most favorable to the nonmoving party.  Id.

On a motion for judgment on the pleadings, the court may consider documents attached to the pleadings, such as those documents attached to the complaint and answer in this case.  Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

### III. DISCUSSION

Article III of the Constitution limits the jurisdiction of the federal courts to litigants with standing to sue.  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Id.  And, "[w]here, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element."  Id. (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).

11

This case turns on the first requirement for standing, injury in fact. To establish injury in fact, a plaintiff is required to show that he or she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

Ocwen Loan argues that the Yeagers have failed to satisfy the 'concreteness' aspect of the injury requirement. Concreteness is an "independent" requirement that must be established in addition to particularization. 136 S. Ct. at 1548.[3] To be concrete, the injury must be "'real,' and not

---

3. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way," rather than reflect a generalized grievance. Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560 n.1). Because the Yeagers allege that Ocwen Loan failed to comply with statutory notice requirements in communications directed specifically at them concerning their individual mortgage loan, this requirement is not at issue here.

'abstract.'" Id. (quoting Webster's Third New International Dictionary 472 (1971)). A harm may be concrete even if it is "intangible." Spokeo, 136 S. Ct. at 1549.

"[B]oth history and the judgment of Congress play important roles" in determining "whether an intangible harm constitutes injury in fact." Id. Thus, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Id. "In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important. Thus, ... Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" Id. (quoting Lujan, 504 U.S. at 578). Here, the Yeagers rely on "Congress' role in identifying and

13

elevating intangible harms." Spokeo, 136 S. Ct. at 1549.

Relying on Congress's role "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." Id. Thus, an allegation of "a bare procedural violation, divorced from any concrete harm," would not necessarily "satisfy the injury-in-fact requirement of Article III." Id.

However, a "risk of real harm" associated with a "violation of a procedural right" can "in some circumstances" satisfy the requirement of concreteness. Id. In Spokeo, the Supreme Court explained: "[T]he law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure. See, e.g., Restatement (First) of Torts §§ 569 (libel), 570 (slander per se) (1938). Just as

14

the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact.  In other words, a plaintiff in such a case need not allege any <u>additional</u> harm beyond the one Congress has identified."  <u>Id</u>. (emphasis in original).  The Court then offered two examples: "<u>Federal Election Comm'n v. Akins</u>, 524 U.S. 11, 20-25 (1998) (confirming that a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III)," and "<u>Public Citizen v. Department of Justice</u>, 491 U.S. 440, 449 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act 'constitutes a sufficiently distinct injury to provide standing to sue')."  <u>Spokeo</u>, 136 S. Ct. at 1549-50.

Because the Yeagers allege merely a procedural violation, the ultimate question for this court, as framed by the <u>Spokeo</u> Court when it remanded its case to

the lower court for reconsideration, is: "whether the particular procedural violation[] alleged in this case entail[s] a degree of risk sufficient to meet the concreteness requirement." Id. at 1550.[4]

In answering this question, this court is guided by other language in Spokeo. In Spokeo, a consumer sued a website operator for an allegedly willful violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq., for publishing inaccurate information about him. Id. at 1544. The complaint did not include any allegation that the false information was actually used to the plaintiff's detriment. Id. The Supreme Court, after emphasizing the important role of Congress in defining the harm, stated that, with the FCRA,

---

4. Because the Yeagers allege a procedural violation, their reliance on Church v. Accretive Health, Inc., 654 Fed. App'x 990 (11th Cir. 2016), is misplaced. As it was undisputed that the alleged debt collector never provided information required by the FDCPA, Church concerned the alleged violation of a substantive right: consumers' "right to receive the required disclosures in communications governed by the FDCPA." Id. at 994, 995 n.2.

16

"Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk," id. at 1550, and offered this important dictum in remanding the case to the lower court:  "[N]ot all inaccuracies cause harm or present any material risk of harm.  An example that comes readily to mind is an incorrect zip code.  It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm."  Id.  With this, the Court clearly signaled that common sense should play a crucial role in determining whether there is standing to assert a violation of a procedural right.  In other words, one should not be distracted by minnows when the aim of the statute is trout.

Here, the Yeagers allege a notice delay of 13 days and nothing more.  There is no evidence that the delay has in any way undermined the FDCPA's goal of providing a consumer with notice of, and an opportunity to challenge, a creditor's debt information.  Surely, the

17

Spokeo common-sense principle dictates that this delay, unaccompanied by any harm or material risk of harm, does not "entail a degree of risk sufficient to meet the concreteness requirement." Id. What the Yeagers have is a minnow; the trout are still out there. The Yeagers, therefore, lack standing to bring this lawsuit. Cf. Nicklaw v. Citimortgage, Inc., 839 F.3d 998, 1001 (11th Cir. 2016) (holding that, because there was no evidence of harm or material risk of harm, the plaintiff lacked standing to bring a suit for statutory damages based on the defendant's belated recordation of a certificate of discharge of the plaintiff's mortgage, which a New York statute required to be recorded within 30 days after satisfaction of the mortgage);[5] Dutta v.

---

5. Ocwen Loan contends that Nicklaw is a spotted dog opinion, that is, that it is on all fours with their argument that the Yeagers lack standing. The court does not agree. That mere delay is insufficient to support standing to bring a claim under one statute does not mean that it is insufficient to support standing to bring a similar claim under a different statute. Whether delay is, by itself, sufficient to
(continued)

18

State Farm Mut. Auto. Ins. Co., No. 3:14-cv-04292-CRB, 2016 WL 6524390, at *3 (N.D. Cal. Nov. 3, 2016) (Breyer, J.) (concluding that plaintiff lacked standing to sue insurance company under the FCRA where company's disclosure of information to consumer three days after the statutory deadline caused no harm), appeal docketed, No. 16-17216 (9th Cir. Dec. 1, 2016).[6]

At oral argument on February 15, 2017, the court inquired of counsel for the Yeagers whether, if allowed to amend their complaint, they could allege any harm or material risk of harm that attended the delay. Counsel said no. Therefore, an amendment would be futile.

***

---

support standing depends upon the aims and structure of, and the rights conferred by, the statute at issue.

6. The court need not reach whether any FDCPA validation-notice delay, no matter how long, would fail to support standing. It is merely saying that a delay as brief as the one alleged by the Yeagers, without any attendant harm or material risk of harm, does not.

19

Because the Yeagers have failed to establish they suffered a concrete injury sufficient to sustain Article III standing, this court may not entertain their FDCPA suit.[7] Ocwen Loan's objection to the magistrate judge's recommendation will be sustained, the recommendation will be rejected, and Ocwen Loan's renewed motion for judgment on the pleadings will be granted.

An appropriate judgment will be entered.

DONE, this the 22nd day of February, 2017.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

---

7. The court's conclusion in this case does not necessarily foreclose alternative avenues for enforcement of the validation-notice requirement. Ocwen Loan argues that, in addition to those circumstances where consumers allege harm or material risk of harm sufficient to possess Article III standing, the validation-notice requirement may also be enforced by the Consumer Financial Protection Bureau (CFPB) through administrative adjudications or litigation. 12 U.S.C. §§ 5563(a) & 5564(a) (conferring enforcement authority over consumer financial laws to CFPB); 12 U.S.C. §§ 5481(12) & (14) (defining applicable laws to include FDCPA).